FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

01 SEP 19 PM 3: 42

U.S. DISTRICT COURT
N D OF ALABAMA

MELVIN ALAN WOOD,　　　　　　　}
　　　　　　　　　　　　　　　　}
　　　　Plaintiff,　　　　　　　}
　　　　　　　　　　　　　　　　}
v.　　　　　　　　　　　　　　　}　　CASE NO. CV 99-B-2552-NE
　　　　　　　　　　　　　　　　}
MICHAEL KESLER, individually and }
in his official capacity as an Alabama }
State Trooper　　　　　　　　　 }
　　　　　　　　　　　　　　　　}
　　　　Defendant.　　　　　　　}

**ENTERED**

SEP 1 9 2001

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment filed by defendant

Michael Kesler ("defendant" or "Kesler"). Plaintiff Michael Alan Wood ("plaintiff" or "Wood")

filed this action against defendant, an Alabama State Trooper, in his individual and official[1]

capacities, on September 23, 1999, alleging the following claims: (1) violation of civil rights

under 42 U.S.C. § 1983, (2) civil rights conspiracy under 42 U.S.C. § 1985,[2] (3) malicious

prosecution under Alabama state law, and (4) false arrest under Alabama state law. The court is

of the opinion that defendant's Motion is due to be granted in part and denied in part.

### I.　SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact

and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The

_____

[1] Plaintiff has conceded that summary judgment is due to be granted as to all claims
against defendant in his official capacity. (*See* Memorandum in Opposition to Motion for
Summary Judgment ("Pl.'s Br.") at 16.)

[2] Plaintiff has conceded that summary judgment is due to be granted on this claim. (*See*
Pl.'s Br. at 14.)



party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every reasonable inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. FACTUAL SUMMARY

On March 30, 1998, plaintiff was driving a mobile home hauler, which is a commercial vehicle designed to pull a mobile home, northbound on I-65.[3] (DX A at 99; PX B at 1.)[4] Bob

_____

[3] Plaintiff was not hauling a mobile home, but was instead carrying a pickup truck "piggyback," so that the pickup truck was completely off the ground. (DX A at 100-01.) The pickup truck was to be the "escort vehicle" once the mobile home was loaded onto the hauler. (*Id.*)

[4] The exhibits attached to Defendant's Motion for Summary Judgment will be referred to as "DX," followed by the corresponding tab letter. Plaintiff's Evidentiary Submissions in Opposition to Motion for Summary Judgment will be referred to as "PX," followed by the corresponding tab letter.

2

Payne ("Payne"), a former Sheriff of Tishmingo County, Mississippi, was traveling with plaintiff. (PX A at 1.) David Martin ("Martin") was driving another mobile home hauler behind plaintiff. (PX A at 1; PX B at 1; DX A at 100-03.) Both plaintiff and Martin were traveling from Red Bay, Alabama, to Nashville, Tennessee, to pick up mobile homes for transport. (PX A at 1; PX B at 1.)

Defendant, an Alabama State Trooper, was on duty checking northbound traffic on I-65 north of Athens, Alabama, and south of the Elkmont exit, which was under construction and had been reduced to a single lane of traffic. (PX A at 1; PX B at 1; DX A at 88-89.) Only the left lane of the northbound interstate was open to traffic. (DX A at 89-90.) There were marked barrels on the interstate between the left lane and the right lane of northbound traffic. (*Id.* at 90-91.) Defendant was parked in the right lane, which was closed to traffic, with his vehicle facing directly south. (*Id.* at 88-91.) The normal speed limit for that area was seventy miles per hour, but due to the construction, the speed limit had been reduced to forty-five miles per hour. (*Id.* at 94-95.) Defendant stopped both plaintiff and Martin, and cited both for speeding and failing to have a log book. (PX B at 1-2; PX A at 1-2; DX A at 95-96 and Exs. 11-14.)[5] Martin testified that neither vehicle was speeding. (PX B at 1.)[6] In the initial report of the incident, defendant

---

[5] Defendant asserts that after both trucks passed him, he turned around and pulled behind Martin's truck. (PX E at 100.) However, other witnesses have contradicted defendant, noting that he pulled out between the two trucks and almost collided with Martin's vehicle. (PX A at 1; PX B at 1.) Plaintiff asserts that this discrepancy puts defendant's credibility at issue. (*See* Pl.'s Br. at 9 n.2.)

[6] Specifically, Martin stated:

> I am familiar with Interstate 65 leading to Nashville, Tennessee. I was aware of the construction area on I-65 north of Athens, Alabama. On this date, I had my citizen's band radio on and was aware that there was a State Trooper in the

3

stated:

> This particular morning these two vehicles were traveling North well above the posted limit when they reached this point. The driver of the first truck, once realizing I was there, quickly decelerated, momentarily loosing [sic] traction, to just above the speed limit. My clock on him, with a tracking history, was 62 mph. The second truck, running faster than the first, also slammed on his brakes, causing his truck to slide sideways. He barely kept control of it and on the roadway went by at 64 mph with a tracking history.

(PX F at 19-20; *see also* PX E 104-06.) Defendant testified at his deposition that upon realizing that defendant was monitoring traffic, plaintiff quickly decelerated to just above the speed limit and lost traction for maybe a second. (DX A at 105-06.) Defendant also contends that upon pulling both drivers over, he informed them that their conduct constituted reckless driving, but in his discretion chose not to issue citations for this offense. (DX A at 129-42.)

The citations issued on March 30, 1998, set the initial court appearance for May 4, 1998. (PX D at 12, 17; DX A at Exs. 11-14.) Plaintiff appeared at the Limestone County Courthouse on May 4, 1998, plead not guilty to the offenses for which he had been cited, and requested a trial date. (*See* PX D at 13, 18; PX G at 63.) The trial was set for July 8, 1998. (PX G at 63.) On June 26, 1998, Wood, as *pro se* plaintiff, requested a subpoena for records from defendant. (PX D at 21; PX E at 159.) Upon receiving the subpoena, defendant failed to provide the requested documents or respond in any way. (PX E at 159-61.)

---

> construction zone. I was traveling between 45-50 mph as I entered the construction zone. . . . I was following Alan Wood at a distance of approximately 250 feet. I noted as we approached this overpass, that Alan Wood had slowed his vehicle to approximately 45-50 mph. I lost sight of his vehicle as he went over the overpass in front of me. . . . I had to immediately brake when I saw the State Trooper's car blocking my lane.

(PX B at 1-2.)

4

Martin entered into a plea agreement with Brian Jones ("Jones"), the assistant district attorney, on July 8, 1998, the date of trial. (PX H at 2.)[7] Martin's plea agreement included a $20.00 fine plus court costs for the log book violation and dismissal of the speeding violation upon payment of court costs and successful completion of driving school. (*See* PX H; PX G at 69-70.) Plaintiff refused Jones's offer of a plea bargain, which included a $380.00 fine for the log book violation and dismissal of the speeding violation upon payment of the court costs and successful completion of driving school. (PX G at 72-73.) When plaintiff refused the plea bargain, defendant issued plaintiff a new citation for reckless driving. (PX D at 1; PX G at 73-75.) Defendant asserts that Jones directed him to write plaintiff a ticket for reckless driving. (DX A at 166-73, 182-83; DX C at 100-03, 110-113, 115-17.) When asked whether he instructed defendant to write plaintiff a ticket for reckless driving, Jones testified that he "advised [Kesler] of the charge of reckless driving." (DX C at 113-16.)

Defendant issued the citation for reckless driving inside the Limestone County Courthouse over three months after he stopped plaintiff for speeding. (PX G at 74-75.) Plaintiff refused to sign the ticket for reckless driving despite being informed that it was not an admission of guilt and would result in his being arrested and taken to jail. (*Id.* at 75-76.) Defendant then arrested plaintiff for the reckless driving offense and took him to the Limestone County Jail. (*Id.* at 76-80.) On the way to the jail, defendant questioned plaintiff as to why he had not taken the plea agreement and why plaintiff had requested defendant's records. (*Id.*) Plaintiff was in jail approximately four or five hours before being released. (*Id.* at 80.)

---

[7] Plaintiff filed a Supplementary Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment, with Exhibit H attached thereto. This evidence will be referred to as "PX H."

Because plaintiff was arrested for reckless driving and taken to jail, no trial was held on

July 8, 1998, for the speeding or log book violations. (PX D at 13, 18.) At the trial for the

reckless driving offense, which was held on September 2, 1998, plaintiff was found not guilty.

(PX D at 2.)

## III.  DISCUSSION

A.    § 1983 Claim

Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

To obtain relief under § 1983, a plaintiff must show that he or she was deprived of a federal right

by a person acting under color of state law. *Patrick v. Floyd Medical Center*, 201 F.3d 1313,

1315 (11th Cir. 2000). Section 1983 is not a source of substantive federal rights. *Whiting v.

Traylor*, 85 F.3d 581, 583 (11th Cir. 1996) (citations omitted). Instead, to state a claim under

§ 1983, a plaintiff must point to a violation of a specific federal right. *Id.* Plaintiff appears to

allege that defendant's actions in writing him a ticket for reckless driving constituted malicious

prosecution, false arrest, and retaliation in violation of the Fourth and Fourteenth Amendments to

the United States Constitution. (*See* Pl.'s Br. at 10-13.)

"An individual's right to be free from unlawful arrest and imprisonment implicates a

liberty interest undisputably protected by the Constitution and federal laws, the violation of

which may give rise to a cause of action under § 1983." *Motes v. Myers,* 810 F.2d 1055, 1059

6

(11th Cir. 1987).  Under the Fourth Amendment, which is made applicable to the States through

the Fourteenth Amendment, persons have the right not to be arrested without probable cause.

*Id.*; *Rose v. Town of Jackson's Gap,* 952 F. Supp. 757, 763 (M.D. Ala. 1996); *see also Jones v.*

*Cannon,* 174 F.3d 1271, 1283 (11th Cir. 1999) (arrest without probable cause is

unconstitutional).  Plaintiff has asserted a violation of his constitutional rights in that he alleges

his arrest was not based on probable cause, and, thus, was unlawful.

As to plaintiff's claim of retaliation, defendant contends that "[w]hile there are a number

of cases dealing with actions by the police which interfere with the free exercise of speech, press

and association or which interfere with religious liberties, the Defendant has found no Eleventh

Circuit case dealing with retaliation as alleged in the Complaint."  (Memorandum Brief in

Support of Motion for Summary Judgment ("Def.'s Br.") at 5.)  Plaintiff, however, argues:

> The Eleventh Circuit has confirmed a retaliation claim against police officers in a
> number of cases. . . . The allegation of retaliation was present in *Whiting v.*
> *Traylor,* 85 F.3d 581 (11th Cir. 1996) involving a law enforcement officer who
> arrested plaintiff after he pled not guilty to charges the officer originally made
> against him. Judge Edmonson wrote for the Court: "[P]laintiff's allegations point
> to three possibly unlawful seizures: his surrender following the issuance of the
> arrest warrant, his arrest as he left the courtroom, and his being required to appear
> to answer the charges after being released on bond. If these alleged acts are
> seizures and are unlawful, they – whether or not there is a federal 'right' (even in
> the absence of some moment of physical restraint) not to be prosecuted in state
> court without probable cause – are the proper basis for a section 1983 claim." *Id.*
> at 584. A similar claim was upheld in *Jones v. Cannon,* 174 F.3d 1271 (11th Cir.
> 1999) where a police officer charged plaintiff with a traffic offense after he had
> been previously acquitted in an earlier criminal proceeding. Judge Hull writing
> for the Court in reversing summary judgment based upon the police officer's
> claim of qualified immunity noted: "Viewing the record in the light most
> favorable to Jones, we conclude that Jones has articulated a viable § 1983 claim
> against Powers based on his allegedly false traffic arrest of Jones without arguable
> probable cause in October 1994, after Jones was acquitted of the murder charges.
> If the jury believed Jones' version of the events, Powers issued a traffic citation to
> Jones for following Powers' vehicle too closely when Powers knew Jones had not

7

done so and that there was no arguable probable cause for the  traffic stop and citation." *Id.* at 1292.  The same conclusion – that summary judgment is inappropriate based on the factual record in this case – is warranted.  . . . [T]he issuance of the reckless driving citation was in retaliation for Wood insisting on his Constitution[al] right to a trial on the speeding and log book tickets and refusing a plea bargain.  The reckless driving citation was issued without any probable cause.  As all matters involving Kesler's claim for qualified immunity have been [controverted] summary judgment is not warranted under the facts of this case.

(Pl's Br. at 11-13.)  After reviewing the cases cited by plaintiff, the court is of the opinion that

these two cases provide the basis for plaintiff's claims under § 1983 based on malicious

prosecution and false arrest.  Thus,  plaintiff's claim of retaliatory prosecution is essentially a

claim for malicious prosecution.  The fact that the arrest may have been retaliatory does not

constitute a separate claim.[8]  These claims are one and the same.  Thus, the court concludes that

plaintiff has asserted a viable § 1983 claim based on the allegedly false arrest and malicious

prosecution.

    *1.*     *Absolute Immunity*

    Although the text of § 1983 does not explicitly provide immunity, the Supreme Court has

reasoned that at the time Congress enacted § 1983, Congress intended to incorporate the common

law immunities then available.  *See Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993); *Malley v.*

*Briggs,* 475 U.S. 335, 339-40 (1986); *Imbler v. Pachtman,* 424 U.S. 409, 417-18 (1976).  "Thus,

determination of absolute immunity under § 1983 is not a policy determination, but involves a

historical exercise." *Jones,* 174 F.3d at 1281.  The Supreme Court and lower courts have

developed a "functional approach" to determine whether executive branch public officials should

---

    [8] The court is unaware of any controlling case concluding that claims for retaliatory prosecution and malicious prosecution are separate and distinct claims under § 1983.

be granted absolute immunity for taking particular actions, or whether they should enjoy instead only the qualified immunity normally afforded public officials. *See, e.g., id.* at 1282.

In determining absolute immunity, the court must examine the "nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher,* 522 U.S. 118, 127 (1997). If the function is similar to a function which would have been immune when Congress enacted § 1983, and if a court determines that § 1983's history or purposes support special protection for the activity, then the court will hold the official absolutely immune from liability. *Jones,* 174 F.3d at 1282. State officials who would not normally enjoy absolute immunity from suit may be entitled to such immunity when they are acting at the direction of an official having such immunity. *C.f. Roland v. Phillips,* 19 F.3d 552, 555 (11th Cir. 1994) ("Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel. A lesser degree of immunity could impair the judicial process."); *Mauldin v. Burnette,* 89 F. Supp. 2d 1371, 1380 (M.D. Ga. 2000) ("Law enforcement officers who execute facially valid court orders in their law enforcement capacities are cloaked with absolute quasi- judicial immunity. . . . Even an unlawful or erroneous order can be considered a 'facially valid order.' . . . Moreover, it is irrelevant for purposes of absolute quasi-judicial immunity whether the order at issue is written or verbal.") (citations and quotations omitted); *International Molders and Allied Workers, AFL-CIO v. Buchanon Lumber Birmingham,* 459 F. Supp. 950, 952 (N.D. Ala. 1978) (Law enforcement personnel acting under the judge's order are entitled to quasi-judicial immunity.).

Defendant alleges that in writing plaintiff a ticket for reckless driving, he was acting at the direction of the District Attorney. (Def.'s Br. at 9.) Therefore, defendant contends that he

9

was "performing a prosecutorial function and should enjoy the same immunity as the District

Attorney, which this Court recognized in dismissing Brian Jones as a Defendant in this case."

(Def.'s Br. at 9.)  The court disagrees with defendant's assertion that he is entitled to absolute

immunity because he was acting at the direction of the district attorney.

The court acknowledges that prosecutors enjoy absolute immunity for the initiation and

pursuit of criminal prosecution. *See, e.g., Imbler,* 424 U.S. at 431.  Further, a prosecutor is

absolutely immune from suit for malicious prosecution. *Jones,* 174 F.3d at 1271 (citing *Imbler,*

424 U.S. at 420-21).  Such absolute immunity extends to a prosecutor's "acts undertaken . . . in

preparing for the initiation of judicial proceedings or for trial, and which occur in the course of

his role as an advocate for the State." *Buckley,* 509 U.S. at 273.  Although absolutely immune

for actions taken as an advocate, the prosecutor has only qualified immunity when performing a

function that is not associated with his role as an advocate for the State. *See id.* at 269-70, 273.

As noted above, a prosecutor is absolutely immune for *prosecutorial* functions. *Jones,*

174 F.3d at 1281-82 (emphasis added).  However, defendant was not engaging in a prosecutorial

function.  Defendant did not prosecute plaintiff; rather he arrested him.  Despite defendant's

argument that in arresting plaintiff he was acting at the direction of the district attorney,

defendant has provided nothing to demonstrate that the district attorney was permitted to give

such an order or that defendant was permitted to act on such an order.  Moreover, defendant's

assertion does not comport with controlling case law. *See Burns v. Reed,* 500 U.S. 478, 496

(1991) (concluding that a defendant prosecutor was not entitled to absolute immunity for giving

certain legal advice to the police during an investigation); *Buckley,* 509 U.S. at 273-74 (noting

that prosecutor is not entitled to absolute immunity when he "performs the investigative

10

functions normally performed by a detective or police officer" and that prosecutor cannot be

acting as advocate before there is probable cause); *accord Prince v. Hicks,* 198 F.3d 607, 611

(6th Cir. 1999) (prosecutor who performs the investigative functions normally performed by a

detective or police officer such as searching for the clues and corroboration that might give him

probable cause to recommend that a suspect be arrested is entitled only at most to qualified

immunity).  Further, as pointed out by plaintiff, "[t]he evidence . . . shows that Kesler submitted

an Alabama Uniform Traffic Complaint ["UTC"] in which he swore to facts claiming probable

cause [relating to the reckless driving offense] before Limestone County Magistrate Myra Peck.

There is no mention on the UTC affirmation that Kesler was doing this upon instruction from

Brian Jones," or any other district attorney.  (Pl.'s Br. at 13 (citing PX D at 1).)  Thus, the court is

of the opinion that defendant is not entitled to absolute immunity relating to his actions in

arresting plaintiff for reckless driving.

     *2.*     *Qualified Immunity*

          a.     <u>Guiding Principles</u>

     Even though the actions of public officials may have violated a plaintiff's constitutional

rights, qualified immunity shields public officers from personal liability if those constitutional

acts did "not violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine the

propriety of qualified immunity, the official's conduct is evaluated under an objective standard.

*See Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).  The official's subjective intent is

irrelevant to the inquiry.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Hutton v. Strickland*,

919 F.2d 1531, 1540 (11th Cir. 1990) ("the purpose of qualified immunity would be defeated if

11

courts were to ascertain and analyze the subjective thoughts of government officials instead of basing judicial decisions on objective actions resulting from surrounding circumstances.").[9]

The test for whether a governmental official is entitled to qualified immunity from § 1983 liability in his or her individual capacity involves a two-step analysis: (1) the official must first demonstrate that he or she was acting within the scope of his or her discretionary authority when the allegedly wrongful acts occurred; and (2) the burden then shifts to the plaintiff to show lack of good faith on the official's part. *Rich v. Dollar,* 841 F.2d 1558, 1563-64 (11th Cir. 1988). The plaintiff's burden is met by proof demonstrating that the official's actions violated clearly established constitutional law. *Id.* Thus, in order to defeat defendant's right to qualified immunity, plaintiff must demonstrate (1) that defendant's conduct violated his clearly established Fourth Amendment rights, and (2) that a reasonable government official would have been aware of those rights. *See Vista Community Service v. Dean,* 107 F.3d 840, 844 (11th Cir. 1997).

"For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law

_____

[9] The court further notes:

Because qualified immunity is evaluated under a purely objective standard without consideration for the government actor's subjective belief, evidence of improper motive is generally irrelevant to qualified immunity analysis. However, evidence of improper motive is an essential component of the plaintiff's affirmative case. Consequently, qualified immunity may protect a defendant from civil liability even when an issue of fact remains as to whether the defendant acted with subjective discriminatory intent.

*Connor v. Halifax Hosp. Med. Ctr.,* 135 F. Supp. 2d 1198, 1217 (M.D. Fla. March 5, 2001) (citing *Koch v. Rugg,* 221 F.3d 1283, 1293 (11th Cir. Aug. 11, 2000); *McMillian v. Johnson,* 88 F.3d 1554 (11th Cir. 1996)).

12

in the circumstances." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994). An important policy reason underlying the doctrine of qualified immunity is the "strong public interest in protecting public officials from the costs associated with the defense of damages actions." *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998) Qualified immunity is intended to protect all but the plainly incompetent or those who knowingly violate the law. *See, e.g., Lassiter,* 28 F.3d at 1149 (citing *Malley*, 475 U.S. at 341). Entitlement to immunity is the rule, rather than the exception. *See id.* ("only in exceptional cases will government actors have no shield against claims made against them in their individual capacities").

     <u>b.</u>   <u>Application to the Facts of this Case</u>

 As noted above, plaintiff has asserted a violation of his constitutional rights under the Fourth and Fourteenth Amendments. Further, defendant has asserted a qualified immunity defense. Thus, defendant must first demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *See, e.g., Rich,* 841 F.2d at 1563-64. "A government official proves that he acted within the purview of his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Hutton*, 919 F.2d at 1537 (internal quotations and citations omitted). It is not disputed that defendant, at all times relevant to plaintiff's claims, was acting within his discretionary authority as a police officer.

 Under the second prong of the qualified immunity analysis, plaintiff must demonstrate that defendant violated clearly established statutory or constitutional law in making this arrest.

13

*See, e.g., Harlow,* 457 U.S. at 818; *Lassiter*, 28 F.3d at 1150. For the right to be clearly

established, "[t]he contours of the right must be sufficiently clear [so] that a reasonable official

would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640. In other

words, plaintiff must show that when defendant falsely arrested him, the law was developed in

such a concrete and factually defined context to make it obvious to all reasonable government

actors in defendant's place that what he was doing violated federal law. *See Braddy v. Florida*

*Dep't of Labor & Employment Security*, 133 F.3d 797, 801 (11th Cir. 1998) (quoting *Jones v.*

*City of Dothan, Ala.*, 121 F.3d 1456, 1459 (11th Cir. 1997)). Thus, the qualified immunity

standard compels courts to undertake a fact-intensive inquiry. *See Samarco v. Neumann,* 44 F.

Supp. 2d 1276, 1292 (S.D. Fla. 1999) (citing *Jones,* 121 F.3d at 1459).

> As stated by the Eleventh Circuit:

> The plaintiff opposing summary judgment has the burden of showing that a
> genuine dispute on a material issue of fact exists. . . . Conclusory allegations . . .
> or evidence setting forth legal conclusions are insufficient to meet the plaintiff's
> burden. . . .The proper test for qualified immunity as set out by this court is:

> The objective nature of qualified immunity defines what fact issues are material
> for summary judgment purposes. To avoid summary judgment it is not enough
> for a plaintiff to produce evidence, which -- if believed (for summary judgment its
> truth is assumed) -- would allow a fact-finder to find just that the
> government-agent defendant was, in reality, wrong about the facts on which the
> defendant acted. Instead, to defeat summary judgment because of a dispute of
> material fact, a plaintiff facing qualified immunity must produce evidence that
> would allow a fact-finder to find that no reasonable person in the defendant's
> position could have thought the facts were such that they justified defendant's
> acts. *See Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1234-35 (11th
> Cir.1992) (illustrating what kinds of fact issues are material to qualified
> immunity).

*Wood v. City of Lakeland, FL,* 203 F.3d 1288, 1292 (11th Cir. 2000). The Eleventh Circuit has

also stated that "qualified immunity presents a question of law for the court to decide, preferably

on pretrial motions" and "the issue should not be submitted to the jury." *Sims,* 972 F.2d at 1234

(citing *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir.1991)). However, although a

plaintiff's allegations may suffice to survive a motion for summary judgment, he may be unable

to adduce sufficient evidence to survive a motion for a directed verdict based on qualified

immunity. *Id.*

At the time of defendant's actions on July 8, 1998, the law was clearly established that an

arrest without probable cause violates the arrestee's Fourth and Fourteenth Amendment rights,

and in order for a police officer to be entitled to qualified immunity, he must have at least

arguable probable cause for the arrest. *See, e.g., Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.

1998); *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir. 1997), *cert. denied,* 525 U.S. 870

(1998); *Bailey v. Board of County Comm'rs of Alachua County, Fla.*, 956 F.2d 1112, 1119 (11th

Cir. 1992); *Lindsey v. Storey*, 936 F.2d 554, 562 (11th Cir. 1991). Thus, under clearly

established law, defendant will be entitled to qualified immunity if there was arguable probable

cause for the arrest. *Jones,* 174 F.3d at 1283 ("Qualified immunity will shield [the defendant

police officers] from a claim of false arrest without probable cause if there was arguable probable

cause."); *see also Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (Arresting officers

are entitled to qualified immunity where there is arguable probable cause.).

Arguable probable cause exists if a reasonable police officer, knowing what defendant

knew, could have believed there was probable cause for the warrantless arrest.[10] *See Gold,* 121

---

[10] "[P]robable cause exists whenever the facts and circumstances known to the officer,
and of which he has reasonably trustworthy information, are sufficient to warrant a person of
reasonable caution to believe that an offense has been or is being committed. The currency of
probable cause is probability, not legal certainty; it may exist even though the evidence before the
officer is insufficient to convict." *United States v. Tinkle,* 655 F.2d 617, 621 (5th Cir. 1981)

15

F.3d at 1445. It is "inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." *Anderson*, 483 U.S. at 641. Thus, "what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones*, 174 F.3d at 1283 n.4.

Plaintiff claims that summary judgment is inappropriate in this case because the facts relating to whether probable cause existed to support the charge of reckless driving are in dispute. (*See* Pl.'s Br. at 7-13.) To support this assertion, plaintiff points out that (1) "Witness Payne, a former sheriff for Tishmongo County, Mississippi who was a passenger in Wood's vehicle, has offered testimony that Wood did not 'lock his brakes, swerve, or loose [sic] control of the truck;'" (2) "Payne further noted that '[n]othing that Alan Wood did in operating the truck cab in which I was a passenger amounted to reckless driving;" (3) "Martin . . . stated that neither his truck or Wood's was going faster than 45-50 mph when they entered the construction area;" (4) Martin also "noted [that] Wood did not lock the wheels on his truck or do anything that caused him to lose control of his vehicle;" (5) "Wood has also denied any driving conduct which would constitute reckless driving;" (6) "Kesler's version of the facts supplied in his summary judgment brief point to a lack of probable cause. . . . Kesler has offered in [his] brief [that] Wood

---

(citing *Brinegar v. United States*, 338 U.S. 160 (1949); *Carroll v. United States*, 267 U.S. 132 (1925)); *see also United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995).

The arguable probable cause inquiry is a lesser standard and is distinct from the actual probable cause inquiry. *See, e.g., Gold*, 121 F.3d at 1446. Under arguable probable cause, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed. *See Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

16

'quickly decelerated, momentarily losing traction to just above the speed limit. Mr. Wood lost

traction for maybe a second;'" and (7) "Kesler admitted that he was not surprised in the not guilty

verdict when the reckless driving ticket was tried." (Pl.'s Br. at 7-9 (citing PX A at 2; PX B at 1-

2; PX F at 19-20; PX G at 53-57, 75; DX A 105-06; Def.'s Br. at 2.))  Further, plaintiff notes that

defendant did not issue the citation until three months after the initial stop when plaintiff refused

to accept the plea agreement, (Pl.'s Br. at 3), and Martin, who was following plaintiff, and who,

according to defendant's testimony, was driving more egregiously, was not issued a ticket for

reckless driving, (*id.* at 9).

Defendant asserts that "[t]he actions of Mr. Wood . . . as [he] perceived them [were] that

Mr. Wood was speeding in a construction zone in a commercial vehicle and that he momentarily

locked his wheels endangering Trooper Kesler's patrol vehicle," and that "[t]hese facts

[constitute] sufficient probable cause to issue a citation to Mr. Wood for Reckless Driving."[11]

(Def.'s Br. at 5.)  Defendant alleges:

> Mr. Wood also does not contradict Trooper Kesler's statement as to what his radar
> read on the occasion.  Mr. Wood simply denies that he was going over 45 mph.  A
> general denial of guilt, however, does not create a jury question on the issue of
> probable cause. . . . [T]he undisputed facts as known to Defendant Kesler [were]
> that his radar showed the Plaintiff traveling 61 mph in a 45 mph speed zone and
> Kesler believed Wood locked his brakes.

---

[11] Under Alabama law, reckless driving is defined in the following manner:

> Any person who drives any vehicle carelessly and heedlessly in willful or wanton
> disregard for the rights or safety of persons or property, or without due caution
> and circumspection and at a speed or in a manner so as to endanger or be likely to
> endanger any person or property, shall be guilty of reckless driving.

Ala. Code § 32-5A-190.

17

(Defendant's Reply Brief ("Def.'s Reply") at 3.) Further, defendant asserts that, "[a]t the very least, these facts amount to arguable probable cause and Trooper Kesler would be entitled to a qualified good faith immunity from suit." (Def.'s Br. at 5.)

The court is mindful that a plaintiff who alleges § 1983 individual capacity liability against a public official faces a demanding burden. However, this burden is not insurmountable. *See Jones*, 174 F.3d at 1283-84 ("Viewing the evidence in [plaintiff's] favor, there is sufficient evidence from which a jury could find that [plaintiff] did not confess during his interview with [the defendant officers], and that [the defendant officers] knew that [plaintiff] had not confessed. No reasonable police officer, knowing these same facts, could have believed that there was probable cause to arrest [plaintiff]. Stated differently, absent the confession there was no arguable probable cause for the warrantless arrest. Therefore, [the defendant officers] are not entitled to absolute or qualified immunity for the initial warrantless arrest of [plaintiff]."); *Penn v. City of Miami,* 1999 WL 1050059, at *18 (S.D. Fla. Sept. 7, 1999) ("Plaintiff has presented evidence to meet her burden of raising a genuine issue of material fact whether [defendant] was aware that he was violating a clearly established federal right when he arrested Plaintiff while possessing knowledge that Plaintiff was [not violating the law]. A jury could find that [defendant] was either plainly incompetent or that he knowingly violated the law. . . . Accordingly, Plaintiff has sustained a triable issue as to the individual liability of [defendant]. Although [defendant] may raise the defense of qualified immunity at trial, the issue will be resolved by a jury based on the evidence presented."), *aff'd.* 221 F.3d 1357 (11th Cir. 2000).

Viewing the evidence in the light most favorable to plaintiff, there is sufficient evidence from which a jury could find that plaintiff was not driving recklessly and defendant knew

18

plaintiff was not driving recklessly. If the jury believed plaintiff's version of the facts under

which defendant arrested plaintiff for reckless driving, then defendant knew plaintiff was not

driving recklessly and there was no arguable probable cause for the traffic citation. Thus,

assuming the facts as alleged by plaintiff, no reasonable police officer could have believed that

there was probable cause to arrest plaintiff. Therefore, plaintiff has met his burden of raising a

genuine issue of material fact and has articulated a viable § 1983 claim against defendant based

on the allegedly false traffic arrest of plaintiff. Defendant is not entitled to summary judgment

based on the defense of qualified immunity.

## B.    State Law Claims

### 1.    *Malicious Prosecution*

Plaintiff also asserts a claim for malicious prosecution. In order to establish a claim for

malicious prosecution, plaintiff must establish:

> (1)    A judicial proceeding initiated by the defendant;
> (2)    The lack of probable cause;
> (3)    Malice on the part of the defendant;
> (4)    Termination of the proceedings in favor of the plaintiff; and
> (5)    Damage to the plaintiff as a result.

*See, e.g., Delchamps Inc. v. Bryant,* 738 So. 2d 824, 831-32 (Ala. 1999); *Montgomery v. City of*

*Montgomery,* 732 So. 2d 305, 309 (Ala. Civ. App. 1999). Malicious prosecution is an action

disfavored in the law. *Cutts v. American United Life Ins. Co.,* 505 So. 2d 1211, 1214 (Ala.

1987); *Montgomery,* 732 So. 2d at 309. The reason for such disfavor is:

> [P]ublic policy requires that all persons shall resort freely to the courts for redress
> of wrongs and to enforce their rights, and that this may be done without the peril
> of a suit for damages in the event of an unfavorable judgment by jury or judge.
> If this were not the case, a large proportion of unsuccessful civil actions would be
> followed by suits for malicious prosecution, and there would be a piling of

19

litigation on litigation without end.

*Boothby Realty Co. v. Haygood,* 114 So. 2d 555, 559 (1959).  The burden of proof is upon the

plaintiff to prove each element of the action.  *Alabama Power Co. v. Neighbors,* 402 So. 2d 958,

962 (Ala. 1981).

        a.    Judicial Proceeding Initiated by the Defendant

Defendant asserts that he cannot be liable for malicious prosecution because he did not

make the decision to charge plaintiff with reckless driving.  (*See* Def.'s Br. at 10-11.)

Specifically, defendant contends:

> In the instant case, the evidence is undisputed that the decision to charge Mr.
> Wood with Reckless Driving was made by Assistant District Attorney Brian
> Jones.  Something more must be shown than that the Defendant provided
> information which set the machinery of the law in motion. . . . In order for
> Trooper Kesler to be held liable for malicious prosecution the Plaintiff would
> have to show that Defendant Kesler induced Assistant District Attorney Brian
> Jones to prosecute Mr. Wood for Reckless Driving by fraud, subornation,
> suppression of testimony or other misconduct.

(Def.'s Br. at 10.)  The court disagrees with defendant's assertions.

First, Alabama law recognizes that a police officer may be held liable under a malicious

prosecution claim.  *C.f. Nesmith v. Alford,* 318 F.2d 110, 121 (5th Cir. 1963) (in an action

brought in the Middle District of Alabama against police commissioner, police chief, and police

officers, the court concluded that this element of the malicious prosecution claim was sufficiently

established where the "criminal proceeding was instituted in the [municipal court] and carried

forward in the Circuit Court"); *Hawkins v. City of Greenville,* 101 F. Supp. 2d 1356, 1362-63

(M.D. Ala. 2000) (claims against police officers for malicious prosecution, where defendant

officers allegedly entered plaintiff's home without a warrant or consent, could not be resolved on

a motion to dismiss); *Franklin v. City of Huntsville,* 670 So. 2d 848, 853 (Ala. 1995) ("[The

defendant officer] argues that he cannot be held liable for false imprisonment or malicious

prosecution, because, he says, he had probable cause to arrest [plaintiff] for disorderly conduct.

Because we have concluded that disputed issues of fact exist relating to probable cause to arrest

for disorderly conduct and failure to obey the police officer's order . . . , the summary judgment

entered in favor of [the defendant officer] is due to be reversed.")

Second, defendant cites *Neighbors,* 402 So. 2d 958, to support his contention that the

judicial proceeding was not instigated by defendant. However, in *Neighbors,* the court discussed

the liability of an informant in an action for malicious prosecution under an indictment returned

by the grand jury:

> The general rule has been declared . . . that, where a person gives information to
> the state's prosecuting officer charged by law with the duty of enforcing the
> criminal law, or the investigation and prosecution of probably committed crime,
> and that information tends to connect another with the commission of crime or the
> violation of the criminal law, and the informant states all the material facts
> bearing thereon within his knowledge, and leaves that officer to a discharge of his
> official duty and the exercise of his own judgment and responsibility, . . . and the
> officer thereafter brings the matter to the attention of the grand jury for their
> investigation of the facts upon probable cause in the premises, without more, the
> informant is not liable in an action for malicious prosecution under an indictment
> returned by that grand jury.

*Id.* at 962-64. The court further stated:

> [P]laintiff must show that defendant was the proximate and efficient cause of the
> proceeding[.] While a defendant in an action for malicious prosecution is
> sufficiently a prosecutor to sustain an action against him, if the prosecution to
> which the plaintiff is subjected is instituted by the state's attorney at the
> defendant's insistence and request, something more is required than that the
> defendant be shown to have given information which set the machinery of the law
> in motion. . . . A defendant has not 'caused a prosecution' in the sense that
> renders him liable when he acts only in subordination to the prosecuting attorney
> and under the latter's directions; nor when he states the bare facts as to the

plaintiff's conduct to such attorney, leaving him to judge of the propriety of proceeding with the charge, where the attorney does not act in any way under the direction of the informant or the influence of the information thus received. The cases are in accord in holding that to sustain an action for malicious prosecution, where the proceeding complained of was begun by another, it must affirmatively appear as a part of the plaintiff's case that the defendant was the proximate and efficient cause of such proceeding.

. . .

Giving information of a crime to officers, or a request that the officers investigate a crime is not aiding or abetting or instigating a prosecution, **unless such information was a misrepresentation of the facts in order to induce action, or there was a suppression of known material facts.**

*Id.* at 963-64 (citations and quotations omitted, emphasis added). This case is inapposite.[12]

Here, defendant was not merely an informant testifying before a grand jury or any other

public official. In fact, defendant, himself, is a public official charged with enforcing the laws of

the state. Defendant issued the citation for reckless driving to plaintiff. Further, plaintiff has

alleged that defendant misrepresented the facts. If the jury believes plaintiff's version of the

facts, plaintiff can show that defendant initiated the criminal proceeding by falsely arresting him

---

[12] Neither is the court persuaded by the other cases to which defendant cites. In *Hovey v. Slawson,* 598 So. 2d 842 (Ala. 1992), the court concluded that plaintiff could not sustain a malicious prosecution action against a corporation and its president for swearing out a warrant for his arrest for receiving stolen property. *Id.* at 843. In the cited portion of *Nat. Sec. Fire & Cas. Co. v. Bowen,* 447 So. 2d 133 (Ala. 1983), the court addressed the effect of a finding of an indictment by a grand jury on the element of probable cause in a malicious prosecution claim. *Id.* at 140. Finally, *Eubanks v. Gerwin,* 40 F.3d 1157, 1160-61 (11th Cir. 1994), involved a situation in which it was "clear that none of the defendants were responsible for the decision to prosecute, and that none of them improperly influenced the decision to prosecute," because they "fully apprise[d] the State Attorney of all relevant information known to them, including that which weighed for and against [plaintiff's] guilt," and they "concluded what they started to do in this case, i.e. they performed their duties as police officers, by acting on a seemingly reliable tip from a previously reliable informant in making an investigatory stop of a suspect, by then arresting that suspect upon the discovery of cocaine in the automobile, conducting a subsequent continued investigation, and turning over all relevant information about the matter to the State Attorney." The court then concluded that the officers were entitled to summary judgment in connection with the plaintiff's malicious prosecution claim pursuant to § 1983. *Id.*

in the Limestone County Courthouse on July 8, 1998, by giving false information to the district

attorney, and by falsely attesting to facts for reckless driving under the UTC before the magistrate

judge.

          b.     Lack of Probable Cause

      As to the second element, probable cause is defined as "a reasonable ground for

suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious

man in the belief that the person accused is guilty of the offense charged." *Montgomery,* 732 So.

2d at 309 (citing *Parisian Co. v. Williams,* 83 So. 122, 127 (Ala. 1919)). "The question is not

whether the malicious prosecution plaintiff was guilty of the thing charged, but whether the

malicious prosecution defendant *acted in good faith on the appearance of things." Id.* (quoting

*Birwood Paper Co. v. Damsky,* 229 So. 2d 514, 521 (1969)) (quotations omitted) (emphasis in

original). Where a claim of malicious prosecution originates from a prior criminal case,

malicious or evil intent may be implied from circumstances in which a prosecution was begun for

any purpose other than a bona fide purpose to bring an accused to punishment as a violator of the

criminal law. *Id.* (citing *Bowen,* 447 So. 2d at 140; *Damsky,* 229 So. 2d 514).

      For the same reasons that the court found that disputed issues of fact exist regarding

whether defendant had arguable probable cause to arrest plaintiff for reckless driving under    §

1983, there are disputed issues of fact as to whether defendant had probable cause to make the

arrest as to plaintiff's claim of malicious prosecution. *See Franklin,* 670 So. 2d at 853 (Summary

judgment entered in favor of the defendant officer due to be reversed where there were disputed

issues of fact relating to probable cause to arrest for disorderly conduct and failure to obey

officer's orders). This unresolved dispute presents a question for the jury. *See Delchamps,* 738

So. 2d at 832 (When disputed facts are presented in malicious prosecution action, the issues of the existence of probable cause for prosecution and the absence of malice are not questions of law for the trial court, but rather present questions for the fact-finder.)

c.    Malice

In an action for malicious prosecution, malice "implies the intentional doing of a wrongful act to the injury of another." *Nesmith,* 318 F.2d at 123 (citing *Huffstutler v. Edge,* 47 So. 2d 197, 199 (Ala. 1950)).

> Malice may be defined to be any "indirect motive of wrong." Any motive, not a bona fide purpose, or, not associated with a bona fide purpose, of bringing a person to punishment as a violator of criminal law, is a malicious motive on the part of the person who acts under its influence.

*Id.* (citing *Jordan v. Alabama G.S.R.R.*, 8 So. 191, 192 (Ala. 1886)). Further, "[i]t is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause." *Ex parte Tuscaloosa County,* 2000 WL 1273686, at *6 (Ala. Sept. 8, 2000) (citing *Delchamps,* 738 So.2d at 833; *McLeod v. McLeod,* 75 Ala. 483, 486 (1883)). The mere fact that a malicious prosecution plaintiff was acquitted in prior action does not establish a want of probable cause. *Delchamps,* 738 So. 2d at 832. Where no other reasonable explanation exists for the conduct of a malicious prosecution defendant, malice may be inferred; however, an inference of malice from the lack of probable cause may be rebutted by evidence showing that the defendant acted in good faith. *Id.* at 833.

Plaintiff asserts that he "can show malice on the part of Kesler through his smart-aleck conduct at the time the original speeding and log book tickets were issue[d], by knowingly issuing a ticket without probable cause, and the comments [that Kesler] made to Wood while

24

taking him to jail." (Pl.'s Br. at 14.) If a jury believes plaintiff's version of the facts, then

defendant arrested plaintiff for reckless driving when he knew plaintiff was not guilty of such

conduct, and such arrest was made in bad faith and "in retaliation for [plaintiff's insistence on

asserting] his Constitution[al] right to a trial on the speeding ticket and log book tickets and

refusing a plea bargain." (Pl.'s Br. at 13; *see also* Pl.'s Br. at 11-12, 14.) Thus, the court is of

the opinion that there are disputed issues of fact as to whether defendant acted with malice when

he arrested plaintiff for reckless driving, and such issues present a question for the jury. *See*

*Delchamps,* 738 So. 2d at 832.

<u>d.</u>     Termination of the Proceedings in Favor of the Plaintiff

It is undisputed that the criminal prosecution of plaintiff for reckless driving resulted in a

finding of not guilty.

<u>e.</u>     Damages

Plaintiff contends that he can establish "both economic loss and mental anguish over this

wrongful prosecution." Defendant does not dispute this assertion.

*2.     False Arrest*

"False imprisonment consists in the unlawful detention of the person of another for any

length of time whereby he is deprived of his personal liberty." Ala. Code, § 6-5-170. "Thus, a

wrongful or false arrest will also support a claim for false imprisonment." *Rose,* 952 F. Supp. at

766 (quoting *Upshaw v. McArdle*, 650 So.2d 875, 878 (Ala.1994)) (quotation marks omitted).

> In order to constitute a case of false imprisonment it is essential that there be some
> direct restraint of the person; but to constitute 'imprisonment,' in the sense in
> which the word is here used, it is not necessary that there should be confinement
> in a jail or prison.  Any exercise of force, or express or implied threat of force, by
> which in fact the other person is deprived of his liberty, compelled to remain

25

where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. So, if an officer tells a person that he is under arrest, and he thereupon submits himself to the officer, going with him and obeying his orders, such person is deprived of his liberty, and if the act of the officer is unlawful this is a false imprisonment.

*Daniels v. Milstead*, 128 So. 447, 448 (Ala. 1930) (citations and quotations omitted).

In making an arrest, "the only requisite is that at the time the arrest is made, the police officer have probable cause." *Rose,* 952 F. Supp. at 766 (citing *Carruth v. Barker,* 454 So. 2d 539, 540 (Ala. 1984)). An arrest without probable cause is unlawful. *Jones,* 174 F.3d at 1283. "[P]robable cause exists where facts and circumstances, of which the officer has reasonably trustworthy information, are sufficient to lead a reasonable person to believe that an offense has, in fact, been committed." *Rose,* 952 F. Supp. at 766 (quotations and citations omitted).

Plaintiff contends that there was no probable cause to support a charge of reckless driving, and, therefore, his arrest and prosecution were improper. Defendant asserts that "[t]here is no dispute . . . that Mr. Wood refused to sign the ticket for Reckless Driving and that he was aware that if he refused to sign he would be taken to jail. The Plaintiff should not be allowed to create a cause of action against Trooper Kesler by his own actions." (Def.'s Br. at 13.) Further, defendant contends that "[t]he custodial arrest of the Plaintiff was lawful pursuant to Section 32-1-4(a)" of the Alabama Code. (Def.'s Br. at 13.) This statute provides:

Whenever any person is arrested for a violation of any provisions of this title punishable as a misdemeanor, the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, and such person shall, if he so desire, have a right to an immediate hearing or a hearing within 24 hours at a convenient hour and such hearing to be before a magistrate within the county or city where such offense was committed. Such officer shall thereupon and upon the giving by such person of a sufficient written

26

bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody.

Any person refusing to give such bond to appear shall be taken immediately by the arresting officer before the nearest or most accessible magistrate.

Any person who willfully violates his written bond to appear, given in accordance with this section, shall be guilty of a misdemeanor regardless of the disposition of the charge upon which he was originally arrested.

Ala. Code § 32-1-4(a).

As noted above, an arrest made without probable cause is unlawful, and an unlawful or false arrest will also support a claim for false imprisonment. *Jones,* 174 F.3d at 1283; *Rose,* 952 F.Supp. at 766. In analyzing plaintiff's § 1983 claim, the court concludes that a question of fact exists as to whether defendant had arguable probable cause to arrest plaintiff for reckless driving. Arguable probable cause is a lesser standard for defendant to meet than probable cause.[13] Thus, as to plaintiff's claim for false arrest, the court concludes that, for the same reasons given as to plaintiff's § 1983 claim, a question of fact exists as to whether defendant had probable cause to arrest plaintiff for reckless driving.

### 3.    *Discretionary Function Immunity*

Defendant asserts that he is entitled to discretionary function immunity because "[t]he act of making an arrest is a discretionary function," and "[e]ven if this Court should find Trooper Kesler initiated the criminal charge, Trooper Kesler would be entitled to immunity from suit since that act would be a discretionary function." (Def.'s Br. at 14.) Defendant further asserts that "[t]he evidence . . . supports a finding that probable cause existed for the arrest of Mr. Wood for Reckless Driving and there is no evidence that Trooper Kesler acted malicously or in bad

---

[13] *See, supra,* n.10.

27

faith." (*Id.*)

State law officers enjoy a discretionary immunity from suit for discretionary acts taken in

the officer's official capacity under Article 1, § 14 of the Alabama Constitution and under § 6-5-

338 of the Alabama Code. *See Williams v. Crook,* 741 So. 2d 1074, 1076 (Ala. 1999). Alabama

Code § 6-5-338 provides, in pertinent part:

> (a) Every peace officer, except constables, who is employed or appointed pursuant
> to the Constitution or statutes of this state, whether appointed or employed as such
> peace officer by the state or a county or municipality thereof,  . . . created
> pursuant to the Constitution or laws of this state and authorized by the
> Constitution or laws to appoint or employ police officers or other peace officers,
> and whose duties prescribed by law, or by the lawful terms of their employment or
> appointment, include the enforcement of, or the investigation and reporting of
> violations of, the criminal laws of this state, and who is empowered by the laws of
> this state to execute warrants, to arrest and to take into custody persons who
> violate, or who are lawfully charged by warrant, indictment, or other lawful
> process, with violations of, the criminal laws of this state, shall at all times be
> deemed to be officers of this state, and as such shall have immunity from tort
> liability arising out of his or her conduct in performance of any discretionary
> function within the line and scope of his or her law enforcement duties.
> (b) This section is intended to extend immunity only to peace officers and
> governmental units or agencies authorized to appoint peace officers.

Alabama law defines "discretionary acts" as "those acts to which there is no hard and fast rule as

to course of conduct that one must or must not take and those requiring exercise in judgment and

choice and involving what is just and proper under the circumstances." *Sheth v. Webster,* 145

F.3d 1231, 1239 (11th Cir. 1998); *Montgomery,* 732 So. 2d at 311.  Discretionary acts require

"constant decision making and judgment." *Montgomery,* So. 2d at 310.

In *Ex parte Cranman,* 2000 WL 1728367, at **11-12 (Ala. Nov. 22, 2000), the Alabama

Supreme restated the rule governing state-agent immunity.  The court stated:

> A State agent shall be immune from civil liability in his or her personal capacity
> when the conduct made the basis of the claim against the agent is based upon the

28

agent's

    (1)    formulating plans, policies, or designs; or

    (2)    exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

        (a)    making administrative adjudications;

        (b)    allocating resources;

        (c)    negotiating contracts;

        (d)    hiring, firing, transferring, assigning, or supervising personnel; or

    (3)    discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

    (4)    exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

    (5)    exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

    (1)    when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

    (2)    when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Cranman,* 2000 WL 1728367, at \*\*11-12. The court further noted: "The Legislature, should it

see fit to do so, can create a mechanism for providing State employees with liability insurance or

it can propose a constitutional amendment that would authorize statutory procedures to make the

State amenable to lawsuits for the torts of its agents while protecting State employees from

lawsuits." *Id.* at \*12. Thus, in order to defeat a state agent's defense of discretionary function

immunity, plaintiff must prove that the defendant's conduct was willful, malicious, fraudulent, in

bad faith, beyond his authority, or under mistaken interpretation of the law. *See Ex parte*

*Tuscaloosa County,* 2000 WL 1728367, at *11-12. Plaintiff asserts:

> [C]onsidering the evidence in the light most favorable to him, coupled with
> favorable inferences, . . . the reckless driving citation was executed with willful,
> malicious conduct or engaged in bad faith. The fraudulent issuance of a reckless
> driving offense when there is a complete absence of probable cause should be
> sufficient evidence of bad faith to submit the case to a jury.

(Pl.'s Br. at 15-16.)

Plaintiff asserts that (1) defendant failed to respond to his discovery request for the trial
on the speeding and log book violations; (2) neither plaintiff nor Martin was cited for reckless
driving during the initial stop; rather, defendant issued the citation only to plaintiff in the
Limestone County Courthouse over three months after defendant initially stopped plaintiff and
Martin; (3) plaintiff was not cited for reckless driving until he refused to enter into a plea
agreement for the speeding and log book violations; (4) Martin, who was following plaintiff, and
who, according to defendant's testimony, was driving more egregiously, was not issued a ticket
for reckless driving; (5) there is nothing in defendant's testimony to support a finding of probable
cause for the reckless driving arrest; and (6) defendant questioned plaintiff on the ride from the
courthouse to the jail as to why plaintiff would not accept the plea agreement and why plaintiff
subpoenaed his records. (Pl.'s Br. at 6-9; *see also* PX A at 1-2; PX B at 1-2; PX D at 21; PX E at
159-61; PX G at 69-78; PX H; DX A at Exs. 11-14.) The court is of the opinion that summary
judgment is a not appropriate as to defendant's assertion of discretionary function immunity
because there is an issue of fact as to whether defendant acted maliciously, willfully, or in bad
faith in arresting plaintiff for reckless driving.

## III.  CONCLUSION

For the foregoing reasons, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted in part and denied in part.  Defendant's Motion is due to be granted as to plaintiff's claims under 42 U.S.C. § 1985 and as to all claims against defendant in his official capacity.  Defendant's Motion is due to be denied as to plaintiff's federal claim under 42 U.S.C. § 1983 and as to plaintiff's state law claims of malicious prosecution and false arrest.  An order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this  19th  day of September, 2001.

**SHARON LOVELACE BLACKBURN**
United States District Judge

31